Frank Liu

304 S. Jones Blvd #3416

Las Vegas, NV 89107

702-861-3154

frank.liu.96@gmail.com

Pro Se Plaintiff


# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA


| **Frank Liu** | Case #3:22-cv-00526-ART-CSD |
|---|---|
| Plaintiff, | |
| | **SECOND AMENDED COMPLAINT** |
| vs. | |
| | |
| **Lyon County and Ryan Powell** | |
| | |
| address for <u>Lyon County</u> (a municipality): 27 S. Main Street, Yerington, NV 89447 | |
| | |
| address for <u>Ryan Powell</u> (Lyon County Sheriff Deputy Commander): 911 Harvey Way #1, Yerington, NV 89447 | |
| | |
| Defendants. | |

# Table of Authorities

Fourth Amendment………………………………………………………..……3, 4, 5, 8, 16, 17

    Equal Protection Clause……………………………………………3, 4, 7, 8, 13, 18

Eighth Amendment………………………………………………………..…3, 4, 13, 17, 18

Fourteenth Amendment……………………………………………………………….3, 4, 7, 18

Monell v. Department of Social Services of the City of New York (436 U.S. 658 (1978)

……………………………………………………………………………………………..11, 12

Rymer v. Davis……………………………………………………………………..…..11

Florida v. Royer, 460 U.S. 491, 103 S. Ct. 1319 (1983) …………………………...……….16

United States v. Ngumezi, No. 19-10243 (9th Cir. 2020) ………………………..……17

Martin v. City of Boise - 920 F.3d 584 (9th Cir. 2019)………………………..3, 4, 17, 18

Ninth Circuit Court's opinion in opinion in Johnson v. City of Grants Pass….3, 4, 17, 18

Terry v. Ohio, 392 U.S. 1 (1968)   or   "Terry Stop"……………………….3, 4, 6, 8, 16, 18

42 U.S.C. Section 1983………………………………………………………………..4

# Table of Contents

Introduction…………………………………………………………………..3

Jurisdiction and Venue…………………………………………………………4

Parties…………………………………………………………………………4

Background……………………………………………………………………5

Why Lyon County is a Proper Defendant…………………………………………11

New sheriff, new direction for Lyon County…………………………………………12

Past Case of Civil Rights Violation………………………………………………13.

Regarding the Eighth Amendment…………………………………………………13

California the "foreign nation"………………………………………………..14

Causes of Action………………………………………………………………16

     Violation of Fourth Amendment (Count 1)…………………………………16

     Violation of Fourth Amendment (Count 2)…………………………………..17

     Violation of Eighth Amendment (Count 3)…………………………………..17

     Violation of Fourteenth Amendment (Count 4)…………………………………..18

Jury Trial Demand………………………………………………………………18

Prayer for Relief………………………………………………………………..18

**Introduction**

1.  Lyon County (a municipality) and Lt. Ryan Powell (an individual) violated Plaintiff Frank Liu's <u>Fourth</u>, <u>Eighth</u> and <u>Fourteenth Amendment</u> Constitutional Rights.  Powell understood Liu was homeless and did not allow Liu to camp in his car on Bureau of Land Management land because Powell discriminated against Liu because Liu was homeless.  Powell conducted a pretextual wellness check on Liu and even though Liu said he was fine, Powell still demanded Liu's ID even though it was not a traffic stop.  Powell had no legal reasonable suspicion Liu had committed a crime or was about to commit a crime when he detained Liu and violated the conditions for a <u>Terry Stop</u> detainment.  Although the initial encounter may have been considered consensual, Liu tried to dispel Powell's suspicions by informing Powell he was fine, and explained the situation.  Liu was being cooperative and despite Liu's attempts to dispel suspicion, Powell turned the consensual encounter into an illegal detainment and required Liu's ID with the intention to run Liu for warrants despite having no legal basis to detain Liu.  This violated Liu's <u>Fourth Amendment</u> rights.  Furthermore, Liu's car door was open wide enough to speak to Powell and Powell could already see inside Liu's car.  After illegally detaining Liu, Powell opened Liu's door even wider without Liu's permission thus further violating Liu's <u>Fourth Amendment</u> rights because opening Liu's door wider constituted a search by giving Powell an even better view inside.  After going to his patrol car to run Liu's ID, Powell came back and ordered Liu to leave.  Powell also forbid Liu from going across the river to camp on BLM land because Powell's intent was to illegally infringe on Liu's rights to camp on BLM Public Land and discriminate against Liu because Liu informed Powell he was homeless in violation of the <u>Equal Protection Clause</u> of the <u>Fourteenth Amendment</u>. Powell's "lawful order" for Liu to leave the rest area and forbidding Liu from going across the river to BLM land almost caused Liu to crash his car into the river on the way to Yerington.  Liu's <u>Eighth Amendment</u> rights (as it relates to <u>Martin v. Boise</u> and Ninth Circuit's Opinion for <u>Johnson v. City of Grants Pass</u>) were violated because there wasn't any homeless shelters nearby and Powell forbid Liu from camping on "BLM Land" in his car.  The area across the river is BLM land and allows up to 14 days of camping to everyone.  Powell forbid Liu from going across the river to camp on BLM land.  Since Powell understood Liu was homeless,

Powell's did not want Liu to stay in the rest area or camp on BLM land.  This was prejudicial and malicious because Powell didn't have to kick Liu out of the rest area and could have used officer's discretion due to snow conditions.  Powell directed Liu to go to Yerington when there weren't any homeless shelters there, and was a clear violation of Liu's rights as Liu was on publicly owned land and was OK with moving to BLM land where camping is allowed for everyone.  The reason Powell gave Liu for not allowing him to camp on BLM land was "You're not camping.  This isn't camping.  You're just living out of your car."  Powell's statement is a clear violation of Liu's <u>Eighth and Fourteenth Amendment</u> rights after he had already violated Liu's <u>Fourth Amendment</u> rights.

Jurisdiction and Venue

**2.** The incident with Lt. Powell occurred on November 8, 2022 in Lyon County, Nevada.
Since the violations of civil rights falls under federal jurisdiction and laws (federal question), the United States District Court for the District of Nevada (Reno Office) has proper jurisdiction and venue.  The following "federal questions" apply:

<u>42 U.S.C. section 1983</u> is a federal statute that allows people to sue the government or law enforcement

<u>Eighth Amendment of the US Constitution</u> as it relates to: Martin v. City of Boise - 920 F.3d 584 (9th Cir. 2019) and Ninth Circuit Opinion for Johnson v. City of Grants Pass

<u>Fourth Amendment of the US Constitution</u> as it relates to: Terry v. Ohio, 392 U.S. 1 (1968).

<u>Fourteenth Amendment of the US Constitution</u> as it relates to equal protection under the law.

Parties

**3.** <u>Plaintiff</u> is a Chinese American male and a citizen of the United States.  During the interaction with defendant Ryan Powell, Liu informed Powell he was homeless.

4

**4.** Both defendants are subject to this Court's personal jurisdiction:

     **a)** <u>Defendant #1</u> is Lyon County, NV with offices out of Yerington, NV. Lyon County, Nevada which is a majority white county.

     **b)** <u>Defendant #2</u> is Commander Ryan Powell (ID number 5552).  He is employed by the Lyon County Sheriff's Office in a supervisory position.

### Background

**5.** On Tuesday November 8, 2022, Lt. Ryan Powell of the Lyon County Sheriff's Office approached Frank Liu's car.  Liu had a Cheetos bag in his hand and when he opened the door he noticed a member of law enforcement standing by his door.  That person was Ryan Powell who was a LT at the time.

**6.** Powell informed Liu he had observed Liu there at the Wilson Canyon Rest Area on Monday (which was the day prior).  It appears he was checking in on Liu despite no member of the public requesting law enforcement.  See **Exhibit A** for layout of Wilson Canyon Rest Area. The reason Powell gave for the encounter was that he was just checking on Liu.  Liu informed Powell he was fine.

**7.** Liu explained to Powell he was homeless and was there for two nights.  Powell asked for Liu's ID.  Liu informed Powell he was willing to provide ID if it was required. Powell informed Liu it was required thus signaling to Liu that it was an official detainment and Liu had to obey Powell's lawful orders at this point.  Since Liu was legally parked, this was not a traffic stop.  It did not appear Powell suspected Liu of committing any crime or was about to commit a crime.  After telling Liu that ID was required, Powell opened Liu's door even further to get a better view inside Liu's car.  This was done without Liu's permission and resulted in Powell further violating Liu's <u>Fourth Amendment</u> rights.  Liu provided ID to Powell because it was required.   Since Liu was required to provide ID, it was under Liu's belief that he was detained. After obtaining Liu's ID, Powell then interrogated Liu with mental health questions such as:

1. What year is it?

2. Do you know who the president is?

3. How many quarters are in a dollar?

Powell had no reason to ask Liu these mental evaluation questions as Liu had already informed Powell he was fine.  The questions were used to determine if Liu was a person of diminished mental capacity.  Powell was prejudiced against Liu because Liu informed Powell he was homeless.  Furthermore, Powell saw that Liu had California license plate on his car when he first approached Liu's car.

**8.** Before being illegally detained, near the beginning of the encounter, Powell had already asked Liu if he had any weapons in his car.  Liu did not have weapons in the car.  Liu informed Powell he had screwdrivers in the car which was in plain view as he was using it to clean his hair trimmer.  Liu explained that part to dispel suspicion.  Powell asked Liu if he had any felony convictions.  Liu answered that he did not.  Nothing Liu told Powell before being detained rose to the level of granting Powell reasonable suspicion to detain Liu under a Terry Stop.

**9.** After being illegally detained, Powell informed Liu that Powell could call someone and to provide social services for Liu.  Powell took Liu's ID and went to his patrol vehicle where he called in Liu's Drivers' License Number over the police radio.  Powell did not attempt to call someone to help Liu.  Upon return, Powell gave Liu back his ID and told Liu he couldn't stay there.  Liu inquired about Powell saying he was going to call someone to help Liu, and Powell informed Liu there was bad cell service and for Liu to go to Yerington.  Powell ordered Liu to leave the rest area.

**10.** Powell informed Liu that the rest area was BLM land.  Liu inquired about the land across the river as Liu noticed a bathroom across the river and wanted to go over there if he wasn't allowed at the Wilson Canyon Rest Area.  Powell informed Liu the land across the river was also BLM land.  Liu inquired about the 14 days camping rule for BLM (Bureau of Land Management) land.  Powell told Liu that he was not camping because he was living in his car.

**11.** Liu asked for a supervisor, and Powell informed Liu he was a supervisor because he was a lieutenant.  Powell checked on Liu under pretense of a wellness check, and even though Liu told Powell that Liu was fine, Powell required Liu's ID so he could run Liu for warrants, and at the end of everything ordered Liu to leave.  Although Liu was OK with going across the river to BLM land, Powell did not allow that either.  Powell told Liu to leave more than once.

Since Powell told Liu to leave and denied Liu's request for a supervisor as Powell was a LT, Liu needed to obey Powell's lawful orders because if Liu did not comply, he could be arrested for disobeying Powell's "lawful" orders.

**12.** Near the end of the encounter with Powell, it had just started to snow. Liu prepared to leave by cleaning his windows and jotting down some notes of the encounter on his laptop. By that time it had snowed quite a bit and Liu left. Please see **Exhibit B**.

**13.** Due to snow conditions, the roads around the rest area had flashing yellow "snow chains required" signs. Liu went one direction but got turned around due to how unsafe the road was as it was covered in snow. Liu had to turn around and drove back passing the rest area he was kicked out of and decided to go to Yerington. On the way to Yerington, Liu almost crashed his car into the river due to the curving road and how slick it was. Liu would not have left the rest area during the hazardous weather conditions had Powell not ordered Liu to leave. Furthermore, if Powell had only ordered Liu to leave the rest area, but allowed Liu to go across the river to BLM land, Liu would have done so. Liu did not have snow chains. Powell did not allow Liu to be in the Rest Area nor be across the river on BLM land because Powell was prejudiced against Liu. Powell's unlawful orders was a clear violation of the Eighth and Fourteenth Amendment. Everyone has equal protection under the law. Everyone is allowed to camp on BLM land for up to 14 days no matter their housing status.

**14.** Powell checked in on Liu with pretext of a wellness check, and instead of promoting safety, Powell ordered Liu to leave and violated Liu's civil rights. Liu almost got into an accident obeying Powell's order to leave the rest area. It turns out the rest area wasn't BLM land after all. Across the river was BLM land. The Bureau of Land Management makes NO distinction between camping in a car or a tent (which can be verified by calling the BLM office). BLM allows 14 days of camping. Liu could have moved to the area across the river from the rest area, but Powell maliciously discriminated against Liu by not allowing him to be there as Powell informed Liu he was not allowed to be across the river either. If Powell told Liu he couldn't be across the river, then it was perceived as a lawful order to Liu and Liu needed to obey Powell or else he could be arrested should Powell come back and see Liu at the rest area or on BLM land across the river.

**15.** After getting to Yerington, Liu parked at the USPS Post Office.  Liu spoke with Undersheriff Ed Kilgore on the phone and expressed that he wanted information on filing a complaint.  Kilgore met Liu at the USPS in Yerington and handed Liu a complaint form. Kilgore was not wearing a bodycam even though Nevada State Law requires members of law enforcement to wear bodycams when interacting with the public.  Liu inquired about Lt. Powell's bodycam footage and Kilgore promised Liu it would be preserved for 6 months. Kilgore said he would watch the bodycam footage later that night.  Kilgore informed Liu that Liu can view the bodycam footage but will not get a copy unless it is subpoenaed.

**16.** Liu informed Kilgore about the types of questions Powell asked him (eg. how many quarters are in a dollar; what year is it; who is the president of the US?).  Kilgore informed Liu that a lot of people with "diminished mental capacity" like to go to the rest area and that was why they ask those questions.  What Kilgore told Liu seemed like it was at least an unofficial policy of the Lyon County Sheriff's Office, and it does seem prejudicial to target the homeless.

**17.** It is Liu's belief Powell asked Liu those questions as Powell wanted go fishing to see if Liu was one of the members of "diminished mental capacity" even though Liu had not given Powell any legal reason to believe he was someone of diminished mental capacity.  Although Liu informed Powell that he was homeless, that was not a legal reason to assume Liu wasn't mentally sound.  Furthermore, Liu strongly believes that people with "diminished mental capacity" have the same rights to camp on BLM land as everyone else.  People with "diminished mental capacity" should not be discriminated against and should be left alone as long as they are are not a threat to themselves or others.  Although Liu is not someone with "diminished mental capacity" Powell tried those questions on Liu even though it was unwarranted just like Powell conducted an illegal <u>Terry Stop</u> on Liu under pretext of a wellness check.  Liu was not a danger to himself or others nor was he committing any crime.  Powell should have left Liu alone and should not have required Liu's ID because he had no legal reason to detain Liu.  Liu has NO misdemeanor or felony convictions.  Liu was discriminated upon when Powell violated Liu's rights.  When Powell prohibited Liu from being at the Wilson Canyon Rest area and prohibited Liu from being on BLM land across the river, this violated the <u>Fourth</u> and <u>Eighth Amendments.</u>  Powell directed Liu to go to Yerington even though Yerington had

no homeless shelters.

**18.** After Liu got to Yerington, Undersheriff Kilgore advised Liu he could stay at another rest area within town.  Liu stayed the night at "Log Cabin Rest Area" within Yerington city limits.  Undersheriff Kilgore promised the body cam footage would be preserved for 6 months.  Kilgore gave Liu his business card and said he could email him the police complaint form against Powell.

**19.** Powell's actions were malicious and mean spirited.  Liu was worried so when he was at Log Cabin Rest Area, he called the non-emergency number to advice dispatch that he was at Log Cabin Rest Area and did not want to be bothered by Powell there.

**20.** The next day on Wednesday November 9th, Liu went to the Sheriff's Office in Yerington to drop off his complaint against Ryan Powell because Kilgore had not responded to any of Liu's emails. Liu inquired about viewing the bodycam footage when he was at the Lyon County Sheriff's Office.  Liu was informed he was not able to view the bodycam footage because the lady that does bodycam videos was on vacation.  Liu met Undersheriff Kilgore and handed Kilgore the written complaint.  Liu inquired if Kilgore had watched the bodycam footage, and Kilgore informed Liu he had not.  Previously, Liu had also emailed Undersheriff Kilgore to get written documentation of Kilgore's promise to preserve bodycam footage for 6 months.  Kilgore has not replied to any of Liu's emails.  This shows lack of care from the Lyon County Sheriff Office over civilian complaints when they refuse to reply to Liu's emails.  Liu asked Kilgore why he didn't reply, and Kilgore informed Liu he had not checked his email.  Before Liu left the sheriff's office, Liu reminded Undersheriff Kilgore he had promised him the bodycam video would be preserved for 6 months.

**21.** Later that day, Liu drove to Mineral County Nevada because he did not feel safe staying in Lyon County Nevada because his civil rights were violated by law enforcement.  Liu also emailed Kilgore asking for the complaint number for the complaint he dropped off.  Undersheriff Kilgore has never replied to any of Liu's emails.

**22.** Liu also emailed Sheriff Frank Hunewill (fhunewill@lyon-county.org) and Sheriff Hunewill has not replied to Liu's email.  Liu has also emailed all 5 Lyon County Board of Commissioners (Wes Henderson, Vida Keller, Ken Gray, Robert Jacobson and Dave

Hockaday) and has not received a reply from them either.  In addition, Liu has forwarded emails to Nevada State Senator Robin L. Titus (robin.titus@asm.state.nv.us) and has not received a reply from her either.  It appears Undersheriff Kilgore, all five Lyon County Board of Commissioners and the Nevada State Senator representing the area (Robin Titus) are all white.  None of the 7 people bothered to return Liu's email or email back acknowledgment of receipt of any of  Liu's emails.

**23.** Liu's civil rights were violated by LT. Powell and it is alarming that neither the Sheriff, the Undersheriff, the Board of Commissioners nor the Nevada State Senator representing Lyon County have bothered to reply to Liu's concerns.  At the USPS and at the Sheriff's Office, Undersheriff Kilgore stated the only way to get a copy of the bodycam footage is with subpoena.  Liu believes this lawsuit is the first step in this process to seek justice and to ensure civil rights are not violated in Lyon County in the future.

**24.** Because Commander Powell was a Lieutenant and not a mere deputy, he should have known the law as it relates to BLM land.  Powell used his supervisory position to intentionally violate Liu's constitutional rights because Powell was prejudiced against Liu.  Powell was not called to the rest area.  Powell chose to violate Liu's civil rights and he directed Liu to leave the rest area even though it was obvious it would snow that day as it had just started snowing near the end of the encounter. Powell's refusal of allowing Liu to go across the river to BLM land is a clear violation of Liu's constitutional rights.  Liu should have had the same rights as anyone else.  The land across the river is BLM land and camping is legal there for all Americans. S i n c e  P owell knew Liu was homeless, he prohibited Liu from camping in his car across the river on BLM land.  Powell's unlawful order for Liu to leave the area and forbidding Liu to go across the river put Liu's life at risk due to weather conditions (snow) and resulted in Liu almost crashing his car into the river on the way to Yerington.  This shows the pretextual wellness check was a lie as Powell did not care about Liu's safety at all.  Powell was fishing to see what he can get Liu on (asking Liu for ID; asking if anything illegal in the car; asking questions to determine "diminished mental capacity" and asking about criminal history).  Liu's detainment was unlawful and Powell violated Liu's civil rights.

## Why Lyon County is a Proper Defendant

**29.** The "Monell Doctrine" established under <u>Monell v. Department of Social Services of the City of New York (436 U.S. 658 (1978)</u> determined that a municipality may be held liable for an officer's actions when the plaintiff establishes the officer violated their constitutional right, and that violation resulted from an official municipal policy, an unofficial custom, or because the municipality was deliberately indifferent in a failure to train or supervise the officer.  Lyon County Sheriff Office has a policy of harassing homeless people at rest areas because Liu brought up the mental health questions to Undersheriff Kilgore and Kilgore said those questions were to check for "diminished mental capacity."  Furthermore, Liu called the Lyon County Sheriff's Department non-emergency line later that night after being parked at a different rest area (Log Cabin Rest Area) and was put in contact with someone who works at the Sheriff's Office.  Liu believes the woman was either a SGT or a regular patrol officer).  She was driving so she had to pull over so she can speak to Liu on the phone.  Liu believes she patrolled the Dayton area. It was a lengthy conversation and Liu appreciated her professionalism.  Liu brought up the "diminished mental capacity" questions to her, and she confirmed that they do ask that.  Liu recalls the Dayton area sheriff deputy told Liu that she had herself checked on a woman parked to see if she was OK.  Based on the conversations from Undersheriff Kilgore and the Dayton area deputy Liu spoke to, it appears Lyon County has a policy of questioning people at random who are parked to see if they are someone of "diminished mental capacity."  This policy discriminates against the homeless who sleep in cars.

**30.** In <u>Rymer v. Davis,</u> a suit alleging police misconduct, the Sixth Circuit Court extended 'Monell' to find municipal liability where no express policy existed. The court upheld a recovery against the city, ruling that the city's failure to train its police officers properly constituted gross negligence. It is consistent with the policy underlying municipal liability to hold a municipality ultimately responsible for police misconduct when the city, through either action or inaction, fails to minimize foreseeable abuses."

11

([https://www.ojp.gov/ncjrs/virtual-library/abstracts/police-misconduct-municipal-liability-under-section-1983](https://www.ojp.gov/ncjrs/virtual-library/abstracts/police-misconduct-municipal-liability-under-section-1983)).

Because at the time of the encounter, Ryan Powell was a Lieutenant this means he was responsible for:

- Manages (plans, organizes, administers, reviews and evaluates) work of sergeants, deputy sheriffs, and non-sworn staff engaged in public safety and related services and activities.
- Develops and implements goals, objectives, policies, procedures and work standards for the division/bureau.
- Identifies training needs and provides for professional development.

Source: [https://www.lyon-county.org/DocumentCenter/View/7752/Lieutenant?bidId](https://www.lyon-county.org/DocumentCenter/View/7752/Lieutenant?bidId)=

**31.** Ryan Powell's role as Lieutenant not only evaluates and trains other members of the Sheriff's Office, his role also develops and implements policies (**EXHIBIT G**). Furthermore, Powell has since been promoted from Lieutenant to "Commander" as per [https://www.lcsonv.com/our-staff](https://www.lcsonv.com/our-staff)

**32.** During the interaction with Powell, Liu did request a supervisor, and Lt. Powell said he was a supervisor since he was a Lieutenant.  This means he was a final decision maker at the time of the detainment.  Due to Powell's position, and how he was put in such a position of oversight, the <u>Monell Doctrine</u> applies because Powell's policies are "unofficial policies." In addition, Powell's role means he is also a trainer of other members of the Lyon County Sheriff's Office.  Since Powell violated Liu's Constitutional rights, then it means Powell wasn't trained properly to qualify as a lieutenant nor train other officers correctly when it comes to ensuring the Sheriff's Office does not violate civilians' civil rights.

### New sheriff, new direction for Lyon County

**33.** Since the encounter, a new sheriff has taken and Kilgore is no longer undersheriff.

Below is a quote from **[https://www.nevadaappeal.com/news/2023/jan/19/new-sheriff-new-direction-for-lyon-county/](https://www.nevadaappeal.com/news/2023/jan/19/new-sheriff-new-direction-for-lyon-county/)**

The Lyon County Sheriff's Office no longer should be seen as a "stepping stone" move for Nevada police officers building a career in law enforcement but as a department serving its community in a meaningful way, Sheriff Brad Pope says.

Pope told the Appeal recently he sought to run for the office last year to make a difference in the department's leadership after having served in LCSO since 2005.

"I don't want to speak negatively of the former administration, but I saw the direction or the lack of direction the agency was going, and I thought I could provide a better service to our deputies and ultimately to the community as a sheriff, so that's what made me run; the state of the agency," Pope said.

The lack of direction and how the Lyon County Sheriff's Office was seen as a "stepping stone" could be something to look into further during discovery because it does not appear the new sheriff had high praise for how the last administration ran things.

### Past Case of Civil Rights Violation

**34.** Below is an exert of an article from

https://mynews4.com/news/local/lyon-county-settles-lawsuit-over-false-arrest-at-festival

> Lyon County agreed this week to pay Ryan Brandon $150,000 to settle his lawsuit accusing three sheriff's deputies of using excessive force when they pummeled and arrested him without cause or warning at a country music festival.
>
> The unprovoked attack occurred after deputies responded to a report of a brawl at the "Night in the Country" festival on July 25, 2019, in Yerington about 60 miles (96 kilometers) southeast of Reno, according to the lawsuit filed in U.S. District Court in Reno in March.

Based on the previous incident, it appears Lyon County needs to get their act together and ensure the Lyon County Sheriff's Office stop violating the constitutional rights of citizens. As a policy maker (due to his position as LT), Commander Powell should have known better than violate Liu's civil rights.

### Regarding the Eighth Amendment

**35.** Lt. Ryan Powell ordered Liu to leave the area and prohibited Liu from going to the BLM land across the river.  Liu was afraid if he disregarded Powell's order, he would be arrested if Powell saw Liu at the rest area (managed by Nevada Dept. of Transportation (NDOT) and leased from US Forest Service.  Liu also believed if Powell caught Liu at the BLM land across river, he would be arrested because Powell had prohibited Liu from being across the river on BLM land.

**36.** If Liu had not complied, Liu believed he would have been arrested for violating Powell's "lawful order."  Therefore, Powell violated Liu's Eighth Amendment rights because cities can not criminalize the homeless when there are not enough shelter beds available.

13

Liu didn't want to be arrested so followed Powell's orders and didn't go across the river.

37. There was no indication that anyone who worked for NDOT or BLM or the US Forest Service had complained about Liu's presence at Wilson Canyon Rest Area (owned by the public).  It was Powell's decision to kick Liu out of Wilson Canyon Rest Area and also prohibited Liu from going to BLM land across the river.

38. It is common sense that even if a police officer is violating a person's civil rights for an illegal detainment, the detainee still needs to obey "lawful orders" otherwise they may be killed by the police (eg. Elijah McClain incident).  It was Liu's understanding that if Liu did not leave the rest area as Powell commanded, Liu would be retaliated against and arrested should Powell find him still there.  Furthermore, Liu could not be across the river either on BLM land as Powell forbid Liu from going across the river as Powell was prejudiced against Liu and did not see Liu as someone who had the same rights as other Americans. Liu needed to leave due to the "lawful order" even though that "lawful order" violated the US Constitution.  Liu did not have cellular reception to make a call to the Lyon County Sheriff's Office when he was at the Wilson Canyon Rest Area.  Lt. Powell was the final decision maker as he was in a supervisory position.  Powell refused Liu's request for a supervisor because Powell was a supervisor.

### California the "foreign nation"

39. Lyon County routinely publishes their board meetings on YouTube.  One notable meeting is located at: https://youtu.be/aDNBasIKsJ8?t=5710

40. Between 1:35:10 to 1:36:11 of the Lyon County Board Meeting on July 22, 2023, Russ Wright of Dayton came up for public comment regarding NPAIP and said "I just had a comment.  If this gentlemen was selling it, I would buy it.  I'm impressed sir.  I am truly impressed.  But to give you a perspective on the 15 or 19 percent increase that they're talking about, I'm aware of an area in that foreign nation on the other side of the Sierras where homeowners are facing 115 percent increase in their homeowners' policy, so 19 percent is a

bargain."

Board Member or Commissioner (possibly Hockaday): "Still doesn't feel good, though Russ."

[laughter from one or more people]

    **41.** It would appear that Lyon County has a prejudice against California as no board members or commissioner protested the bigoted comment about California being a foreign nation.  No board members or commissioner admonished Wright's comments because they likely agree with him.  Lyon County is a majority white county with white board members, and it would appear Lyon County officials agree that they don't want to be a "foreign nation" like California.

    **42.** Furthermore, it would appear Russ Wright of Dayton has attended and commented on multiple Lyon County Board Meeting and is liked by the Board of Commissioners.  His comments made at least one of board members chuckle.



**43.** While the public has freedom of speech, if a member of the public is saying prejudicial or bigoted comments, someone from the board should have called out Mr. Wright about it.  One would assume that there are certain rules of decorum at board meetings.

**44.** Due to the laughter (and nobody objecting), it appears some members of the Lyon County Board of Commissioners share the same views as Mr. Wright.  There were also two members of Lyon County Sheriff's Office sitting in the front row.  Members of Lyon County Sheriff's Office (including Sheriff Pope) routinely attend Lyon County meetings and things discussed in these board meetings (including opinions from the general public) influence the Sheriff's Office when they enforce the law.

**45.** Powell saw that Liu had California License Plate when he approached Liu for the detainment.  It would appear due to the hostility against California, the license plate could have been a contributing factor to detain Liu and violate Liu's rights.

**Causes of Actions**

**I. Violation of Fourth Amendment (Count 1)**

**46.** <u>Florida v. Royer</u> makes it clear "The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."

**47.** Powell approached Liu under the pretense of a wellness check.  Liu informed Powell that Liu was fine.  During the consensual encounter, Liu did not do anything to raise Powell's suspicion to the threshold of a <u>Terry Stop</u>, but Powell still detained Liu.  Liu tried his best to dispel Powell's suspicions but Powell was intent on running Liu's information for warrants.  The fake purpose of the encounter was to determine if Liu was OK.  Liu was OK. How was running Liu's information to check for warrants part of a wellness check?  It isn't. Powell violated Liu's <u>Fourth Amendment</u> rights by illegally detaining Liu.

## II) Violation of Fourth Amendment (Count 2)

**48.** In United States v. Ngumezi, No. 19-10243 (9th Cir. 2020), it was determined that police officers may not open a person's car door and lean inside during a traffic stop if they lacked probable cause or any other particularized justification, such as a reasonable belief that the driver poses a danger.  Even though an officer can require vehicle occupants to get out of a vehicle during a traffic stop, opening the door and entering the vehicle exposes more of the vehicle to view and impermissibly intrudes on the driver's privacy expectation.

**49.** In this case, even though Liu's door was already partially open, Liu did not give Powell permission to further open his car door.  By opening Liu's door wider, Powell allowed himself a better view of the inside of Liu's car.  Furthermore, Liu had already answered Powell's questions at the beginning of the encounter when he informed Powell he didn't have any weapons in the car.  Powell opened Liu's car to better position himself to see inside.

## III) Violation of Eighth Amendment (Count 3)

**50.** The U.S. Ninth Circuit Court of Appeals issued an opinion on September 29, 2022 upholding and clarifying the right of people experiencing homelessness to survive in the absence of housing and declaring that civil and criminal punishments for homelessness are cruel and unusual. The opinion in Johnson v. City of Grants Pass (formerly Blake v. City of Grants Pass) upholds a prohibition on the criminalization of the basic, life-sustaining activities of people experiencing homelessness, such as sleeping outside or in tents. The ruling supports and affirms rights for unhoused people forced to sleep outside across the country, protecting them from unjust punishment.

**51.** On November 8, 2022, Liu informed Powell he was homeless.  Liu was parked at the Wilson Canyon Rest Area because he was just trying to survive through the cold weather while living in his car.  Because Powell gave Liu a lawful order to leave Wilson Canyon Rest Area (publicly owned) and also prohibited Liu from going across the river to camp on BLM land (publicly owned) for up to 14 days, Powell violated both Martin v. Boise and 9th Circuit opinion for Johnson v. City of Grants Pass.  If Liu would have disobeyed Powell's lawful

orders, then Liu could have been charged with disobeying a lawful order or perhaps criminal trespassing because Powell had ordered Liu to leave and forbid Liu from going across the river to BLM land.

**52.** Powell directed Liu to go to Yerington, but when Liu got there, he found out from Undersheriff Ed Kilgore that there were no homeless shelters in Yerington.  Furthermore, there did not appear to be any homeless shelters around the Wilson Canyon Rest Area which is located between Yerington and Smith Valley.  Because there was no homeless shelters in Yerington or close to Yerington, Powell violated Liu's Eighth Amendment Rights.

### IV) Violation of Fourteenth Amendment (Count 4)

**53.** Because Powell was prejudiced against Liu, Lt. Powell used his authority as a supervisor to violate the equal protection clause of the Fourteenth Amendment by prohibiting Liu from going across the river to camp on BLM land for up to 14 days even though all Americans are allowed to camp on BLM land for up to 14 days.

### Jury Trial Demand

**54.** Plaintiff requests jury trial.  Alternatively, Plaintiff is also open to bench trial.

### Prayer for Relief

Plaintiff requests the Court grant the following relief:

A. Monetary relief of over $75,000 (with exact amount to be determined by jury trial)

B. Require all Lyon County Sheriff employees to attend a minimum of 10 hours of training in regards to civil and constitutional rights and how to not infringe on these rights.

C. Hire a third party entity (such as Ernest & Young or similar) to audit all bodycam video within the last 3 years to ensure no other violations of civil rights have occurred during any police contact with any members of the public.

D. Injunction for Lyon County Sheriff's Office to abide by the rulings set forth by Terry v. Ohio, Martin v. Boise and the opinion set forth by the Ninth Circuit Court of Appeals in Johnson v. City of Grants Pass.

E. Punitive damages

Respectfully submitted,

Dated: 07/12/2023              Frank Liu

                              Pro Se Plaintiff